UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-14051-CIV-MARTINEZ/LYNCH

LISA TAYLOR,

     Plaintiff,

v.

JOHNSON CONTROLS BATTERY GROUP, INC.,
AND WAL-MART, INC. a/k/a WAL-MART
SUPERCENTER STORE #3527,

     Defendants.

_____/



FILED by _____ D.C.

DEC 1 3 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

<u>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT (DE 58 & 59)</u>

**THIS CAUSE** comes before this Court upon the above Motions for Summary Judgment. Having reviewed the Motions, their respective Responses and Replies, and the other pertinent portions of the record, this Court recommends as follows:

<u>BACKGROUND</u>

1.    Pending before the Court is the Plaintiff's Amended Complaint (DE 27). The Defendants now seek summary judgment in their favor on all counts brought against them.

2.    Underlying the Plaintiff's claims for relief is a lawnmower battery made by Defendant Johnson Controls Battery Group, Inc. and sold to her by Wal-Mart, Inc. The basic facts are not disputed. This Court summarizes those basic facts as

follows, drawn from both the Amended Complaint and the summary judgment pleadings.

3.   On July 28, 2011, after buying the battery, a Wal-Mart employee placed it on the back floorboard of the Plaintiff's car. Two days later the Plaintiff's husband installed the battery into a lawnmower. The battery did not "turn over" the mower's starting system. The husband installed it into a different lawnmower. The battery did not start that mower either. However a different battery did start the mowers. From this, the Plaintiff reasoned that the Johnson Controls' battery was "defective", and she put it back in her car to return to Wal-Mart. She did this on August 4, 2011.

4.   In the afternoon of August 4, 2011, before driving to Wal-Mart, she noticed that the battery had "boiled over" acidic fluid onto the floorboard and splattered on the back seat. She describes the battery as a lead-acid battery and the spill over as "gel electrolytes". Because the battery still was boiling over, she drove to Wal-Mart with all the windows down and the air conditioning off.

5.   There at Wal-Mart she requested to speak with the store manager. The automotive department manager responded, and the Plaintiff showed him the battery. That manager called another manager to extract the battery from the Plaintiff's car. These employees later were identified as Assistant Store Manager

Greg Ray and Service Manager Bob Weaverling. The Plaintiff further describes how the employees handled the battery which she says was done in an unsafe way and in violation of OSHA standards and other guidelines.

6.   The Plaintiff was requested to fill out a "Customer Statement" form, which she did, explaining that the battery did not work and then boiled over in the back of her car. Wal-Mart replaced the battery at no extra cost.

7.   The employees took photos of her car's back seat to document the property damage. (No photos of the battery, itself, were taken at this point.) The employees then placed the battery in an open plastic container for it to be returned to her. The Plaintiff was told to keep the battery for future analysis by the manufacturer. To alleviate the Plaintiff's concerns about the battery's state, the employees poured baking soda over it and the floorboard. The purpose of the baking soda was to neutralize the battery acid. The Plaintiff contends that these arrangements did not comply with the various standards for the battery's safe-handling. The replacement battery was placed in the trunk.

8.   En route home, the store called the Plaintiff and asked her to return. She did, and back at the store, more photos of the battery were taken. The Plaintiff objects to the fact that Wal-Mart has not produced these additional photos. The

Plaintiff also objects to the lack of store surveillance video footage, footage that Wal-Mart says was recorded over.

9.    The Plaintiff alleges that while the photos were being taken, she felt queasy. She was coughing and finding it difficult to take a full breath. These symptoms worsened while driving, and she drove to a friend's house rather than to home. Her friend's house lies closer to the Wal-Mart store, and her husband was there. She alleges that upon arrival she was in respiratory distress and she lost consciousness. She was hospitalized and treated for sulphuric acid burns to her larynx and lungs.

10.    The car was left to air out, but even sixteen hours later, there still was a noxious chemical smell. The Plaintiff and her husband rented a replacement car, and they hired a company to clean the interior of the car. The car was deemed satisfactorily cleaned as of August 11, 2011.

11.    The Plaintiff continued to receive medical treatment. On August 14, 2011 she was diagnosed with pleurisy, and on September 22, 2011 she was diagnosed with dyspnea.

12.    Defendant Johnson Controls proffers Joseph Liedhegner as its expert witness regarding the battery. Mr. Liedhegner is an employee of the Defendant's. Mr. Liedhegner describes the battery as having a "low water loss design with an electrolyte solution of sulfuric acid and water", with most of the

electrolyte being water. He opines that "sulfuric acid fumes are not an inhalation hazard and, in any event, a leaking lawn and garden battery would not create a concentration of sulfuric acid that would cause the type of reaction alleged." Mr. Liedhegner opines further that the only way the battery could have boiled over as alleged was if it had been substantially altered and abused after leaving the factory. Mr. Liedhegner opines that the application of baking soda is a common method "for neutralizing sulfuric acid and would not cause electrolyte to boil."

13.   Although Mr. Liedhegner denies that the battery could have emitted the irritants as alleged, he does not reconcile that opinion with the battery label that warns against poison, explosive gases that can cause blindness or injury, and sulfuric acid that can cause blindness or severe burns. Nor does Mr. Liedhegner reconcile that opinion statement against Johnson Control's own Material Safety Data Sheet given to vendors regarding possible health hazards including respiratory irritation caused by acid mist generation and regarding safe handling measures such as adequate ventilation.

14.   The Plaintiff objects to Mr. Liedhegner's Expert Witness Report both substantively on <u>Daubert</u> grounds and procedurally. This Court does not address this particular objection. First it raises an issue of evidence admissibility, and second it raises an issue beyond the scope of the Motions

for Summary Judgment. The Plaintiff should raise her objections to Mr. Liedhegner's report by way of a separate motion.

<u>DISCUSSION</u>

15.  A movant is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. <u>See</u> Fed. R. Civ. P. 56, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 578 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. <u>See Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970). Notwith-standing this presumption, the non-moving party must come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). In short, this means the non-moving party must offer---and not just plead---evidence of a prima facie case. What is more the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. <u>See</u> Fed. R. Civ. P. 56(e), <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). <u>See</u> <u>also</u>, <u>Castleberry v. Goldome Credit Corp.</u>, 408 F.3d 773, 785-86 (11th Cir. 2005). In this way, Rule 56 serves to eliminate the needless delay and expense to the parties and to the Court of an unnecessary trial.

16.  This Court begins with Johnson Controls' Motion for Summary Judgment. Against Johnson Controls, the Plaintiff alleges product liability regarding its battery. Count I is a strict liability claim based on defective design. Count II is a strict liability claim based on a failure to warn. The last count against Johnson Controls, Count VI, appears to recast her claims of defective design and failure to warn in terms of a general negligence cause of action. The Defendant Johnson Controls argues that an expert witness is needed to establish the elements of these causes of action: because the Plaintiff does not proffer an expert witness, she cannot establish the necessary elements. Thus summary judgment should be granted in its favor.

17.  Before addressing the expert witness issue, this Court first reviews what the elements of the Plaintiff's product liability claims are and thus what the Plaintiff must prove to prevail on her theories of wrongdoing.

18.  This Court pulls the elements of the Plaintiff's different product liability causes of action from Hosler v. Alcon Laboratories, Inc., 2012 WL 4792983 (S.D.Fla. 2012) and Broderick v. Sofamor Danek Group, Inc., 1999 WL 1062135 (S.D.Fla. 1999): In order to state a claim in Florida for strict products liability based on a design defect, the Plaintiff must show: (1) that a defect was present in the product; (2) that it

existed at the time the manufacturer parted possession with the product; and (3) that it caused the injuries of which she complains. In order to state a claim based on negligent design, the Plaintiff must show that (1) the defendant owed a duty of care towards her; (2) the defendant breached that duty; (3) the breach was the proximate cause of her injuries; and (4) the product was defective or unreasonably dangerous. Common to both theories of product liability is the need to establish the presence of a defect and the need to establish causation. See Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005).

19.   The "defect" needed to prove either theories of product liability is "an unreasonably dangerous condition in the product", one unforeseeable to the product's user. See Hosler and Broderick, supra. Defendant Johnson Controls' primary argument is that the Plaintiff fails to demonstrate the presence of a design defect in the subject battery. The Defendant argues that it is the Plaintiff's lack of an expert witness that undermines her ability to make such a demonstration. Indeed the Defendant goes so far as to contend that expert witness testimony is the only way that the Plaintiff can prove the existence of a design defect in the battery.

20.   This Court does not find the case law cited by the Defendant to impose such a per se rule. To begin with, this Court does not take into consideration those cases cited by the

Defendant that apply different legal standards altogether, see, e.g., Hughes v. Stryker Corp., 423 Fed.Appx. 878 (11th Cir. 2011) (applying Alabama's Extended Manufacturer Liability Doctrine) and Cruz v. U.S., 2013 WL 395460 (S.D.Fla. 2013) (applying Florida's medical malpractice law), standards which may impose heightened burdens of proof. Nor does this Court find the Danek line of cases, see Broderick, supra, Alexander v. Danek Medical, Inc., 37 F.Supp.2d 1346 (M.D.Fla. 1999), and Savage v. Danek Medical, Inc., 31 F.Supp.2d 980 (M.D.Fla. 1999), or the other case to which the Plaintiff cites that concerns a medical device, see Drury v. Cardiac Pacemakers, Inc., 2003 WL 23319650 (M.D.Fla. 2003). The medical device context raises issues of design defect (and causation) more complicated than what the Plaintiff's lawnmower battery does.

    21.  The non-medical device cases to which the Defendant cites are also distinguishable and unpersuasive, but for a different reason. Those cases present situations where the plaintiffs' lack of evidence went beyond merely lacking an expert witness but lacking any credible evidence of product defect, at all. See Hall v. Sunjoy Indus. Group, Inc., 764 F.Supp.2d 1297 (M.D.Fla. 2011), Cooper v. Old Williamsburg Candle Corp., 653 F.Supp.2d 1220 (M.D.Fla. 2009), and Humphreys v. General Motors Corp., 839 F.Supp. 822 (N.D.Fla. 1993). The case of Beauregard v. Continental Tire North America, Inc., 695

F.Supp.2d 1344 (M.D.Fla. 2010) presents the opposite problem. Given the many flaws in the plaintiff's other evidence regarding the defective tire claim, the plaintiff had only his expert witness upon which to rely, but that expert witness's report was too problematic to be admissible. Without that report, the Plaintiff therefore lacked the evidence to prove the claim.

22.  In any event the above cases do not cite definitive legal authority imposing a per se rule requiring the need for an expert witness that exists outside the particular fact patterns that each case addressed. See, e.g., Alvarez v. General Wire Spring Co., 2009 WL 248264 (M.D.Fla. 2009). Indeed the Defendant cannot assert such a per se requirement. The Eleventh Circuit expressly denied such a per se rule (except in the context of medical malpractice, insanity, or foreign law), in Worsham v. A.H. Robins Co., 734 F.2d 676, 685, n.8 (11th Cir. 1984), a position which the Eleventh Circuit re-asserted in the case of Hudson Marine Mgt. Servs., Inc. v. Thomas Miller (Miami), Inc., 417 Fed.Appx. 845, 847 (11th Cir. 2011). The Eleventh Circuit says that "expert testimony is often required to establish defective design of a product," Worsham, 734 F.2d at 685, n.8, not always required.

23.  Therefore the dispositive issue, properly framed, is not whether the Plaintiff fails to meet a per se rule requiring an expert witness but whether the Plaintiff can prove the

existence of a design defect without an expert witness. The
Worsham opinion explains that an expert witness is needed only
if the jury would be unable to draw correct conclusions from the
facts. Rule 702, Fed.R.Evid., thus permits a party to proffer
expert witness testimony if scientific, technical, or
specialized knowledge would help the fact-finder to understand
the evidence or determine a fact. This Court acknowledges that a
question of battery design is at its core a question of
chemistry and engineering. This Court does not see, however, how
the mere presence of scientific inquiry means that a jury needs
the benefit of expert witness testimony. The Defendant certainly
does not focus its argument on this issue.

    24. That is not the end of the matter. The Plaintiff has
the option of proving design defect by way of legal inference.
This is called the Cassisi inference, and it applies when a
plaintiff can show that the product (1) "malfunctioned" (2)
"during normal use". See Cannioto v. Louisville Ladder, Inc.,
449 Fed.Appx. 797 (11th Cir. 2011) and Rink, supra. This is in
effect the Plaintiff's theory of product defect as she presents
it in her Amended Complaint and in her Response, although the
Defendant does not address this important principle of Florida
product liability law until its Reply, and in a footnote at
that. The Plaintiff states a persuasive claim of entitlement to
the Cassisi inference given that a non-starting and "boiling

over" battery that emits caustic fumes is a "malfunction" and that using the lawnmower battery to operate a lawnmower is "normal use".

25.   The Plaintiff also has the benefit of circumstantial evidence. This Court discerns no dispute of fact that she did buy the battery in question; that Wal-Mart reacted to the situation in a way consistent with a defective or malfunctioning battery; and that the Plaintiff sustained respiratory harm and property damage from the battery's acid. The Plaintiff points to the Johnson Controls' own Material Safety Data Sheet regarding the battery, proper handling during malfunctions, and inhalation risk. The Plaintiff even goes so far as to point out ways that the battery could have been designed better such as an available special casing structure that the Defendant, itself, uses in other batteries. Although the existence of alternative designs does not necessarily mean that the product is defective or unreasonably dangerous, as the Defendant stresses, it still counts as relevant evidence. It does not appear that the Defendant counters with any evidence, for example, evidence that the Plaintiff had altered the battery or used it in an unintended, unforeseeable way. The Defendant does say that its expert found no cracks or leaks to the exterior. The Plaintiff reasons from this, and from the fact that the battery's vent

caps were warped and gaping at their ends, that the defect was internal and consistent with her theory of defective design.

26.   Of course, the Plaintiff still must convince the fact-finder that the battery was "defective" and defective in a way that injured her health, damaged her property, and caused any other consequential damages. At issue before this Court now is whether the Plaintiff has enough evidence (or the benefit of a legal inference) to go to trial. This Court finds that she does, both as to the presence of a defect and as to causation.

27.   Having dispensed with the Defendant's challenge to the Plaintiff's theories of defective design, this Court turns next to its challenge of her theory of strict liability due to the failure to warn. The Plaintiff argues that the battery came with inadequate labels or instructions regarding proper transportation, the boil-over hazard, and proper handling in the event of a battery acid spill-over.

28.   This Court cites to the case of Marzullo v. Crosman Corp., 289 F.Supp.2d 1337, 1347 (M.D.Fla. 2003) for the elements of this claim for relief. Under the theory of strict products liability, a product may be defective by virtue of an inadequate warning. To establish this, the Plaintiff must prove that Defendant Johnson Controls, the battery's manufacturer, did not adequately warn her of a particular risk that was known or knowable in light of the generally recognized and prevailing

best scientific and medical knowledge available at the time of manufacture and distribution. This theory of products liability does not require a showing of negligence. Were the risk open or obvious, no such duty to warn would arise.

29.  Again, the focus of the Defendant's argument is that the Plaintiff fails to produce an expert witness to prove the inadequacy of the given warnings and instructions or that it fell short of its duty of care. For the same reasons above, this Court finds no per se rule requiring an expert witness. Compare Broderick, supra, at *3 (stating, in the context of a medical device and where the duty is owed to a physician and not a lay patient, that "[e]xpert testimony must therefore be used to establish the inadequacy of the warning.") The Defendant does not explain why an expert witness is needed here. That is, the Defendant does not explain why the issues raised by this case are so complex that a jury could not reach an informed decision from the present evidentiary record, without the benefit of expert testimony. Thus the Defendant's request for summary judgment as to this count fails, as well.

30.  This Court emphasizes the nature of the Defendant's argument. The focus of the Defendant's argument with respect to all three products liability causes of action is the Plaintiff's lack of an expert witness. This Court sees no per se reason for finding that the Plaintiff's lack of an expert witness

automatically warrants summary judgment relief in its favor. Nor does the Defendant carry the argument further to explain why an expert witness is needed here under the circumstances of this particular case to supplement the Plaintiff's present evidence and arguments. At least, the Defendant does not make a substantive, persuasive argument of such. What arguments the Defendant does raise along these lines are conclusory and thus insufficient to support a summary ruling in its favor.

31.  This Court addresses at this juncture the Plaintiff's recently filed Motion to Extend Deadlines (DE 66), filed after the briefing of the instant summary judgment motions. There, she asks the District Court for additional time to obtain an expert witness in order to better prove her case. This Court does not find this Motion to necessarily waive her argument in her Responses to the Motions for Summary Judgment that she does not need an expert witness to prove her case. Moreover, because that motion remains pending, the expert witness issue raised now by the Defendant remains ripe for review and is not moot.

32.  Next this Court turns to Defendant Wal-Mart's Motion for Summary Judgment. The Plaintiff alleges that Defendant Wal-Mart was negligent in its handling of the battery and that this negligence resulted in a health injury and property damage. The Plaintiff alleges that the two employees with whom she dealt handled the defective battery in an unsafe manner; in a way

inconsistent with the various applicable safety guidelines and procedures which she specifies in her pleadings; and in a way inconsistent with the higher standard of care and training expected of management-level employees. In addition to the evidence that she proffers, the Plaintiff also objects to evidence that Wal-Mart does not proffer: Wal-Mart's photos of the battery and overridden surveillance tapes. She draws attention to this both in her Responses to the instant Motions and in a separately filed Motion for Sanctions due to Spoliation (DE 67). She frames her negligence theory in terms of "professional negligence" and "culpable negligence", and she seeks to hold Wal-Mart liable for the negligence as their employer under the theory of vicarious liability.

    33.  This Court does not find the Defendant's arguments persuasive that summary judgment is warranted in its favor on the Plaintiff's common law-based negligence claim. That there is no private cause of action available to the Plaintiff to bring an OSHA violation is irrelevant. The Plaintiff cites the relevant OSHA standards to support her theory of negligence, not to seek redress on the purported OSHA violation directly. Whether the alleged facts describe a degree of negligence that rises to the level of "culpable negligence", e.g., recklessness, is for the fact-finder to decide. Whether the Plaintiff formally pleads out the elements of the negligence cause of action is a

non-dispositive point given the otherwise very detailed nature of the Plaintiff's pleadings and the leniency afforded pro se parties in the construction of their pleadings.

34. This Court emphasizes how detailed the Plaintiff's Amended Complaint is, and it basically presents the same theories of wrongdoings, explanations, and evidence that she relies upon now to oppose the summary judgment motions. Not only does the Amended Complaint far exceed the Defendants' earlier arguments that it fails to meet the Twombly pleading standard, but it placed the Defendants on full notice of the nature of the Plaintiff's claims, thereby giving the Defendants ample opportunity to better develop their arguments.

35. It is only with respect to the Defendant Wal-Mart's last argument in favor of summary judgment that this Court finds meritorious. Count VI of the Amended Complaint is a products liability claim against Wal-Mart (in conjunction with Defendant Johnson Controls). The Plaintiff simply advances no theory of products liability under which Wal-Mart, as the seller of the subject battery, could be held liable. To this extent, this Court finds the Defendant entitled to summary judgment in its favor.

## CONCLUSION

36. The standard for when summary judgment can be entered requires that the facts and their reasonable inferences are

construed in favor of the non-movant. Here there is no real dispute of fact. The main dispute instead concerns the quality of the evidence. The Defendant Johnson Controls raise the argument, in which the Defendant Wal-Mart joins, that the Plaintiff's lack of an expert witness means she cannot prove her case at all. Because the Plaintiff does proffer a reasonable factual predicate to support her claims and because her claims are relatively straightforward, it is the Defendants' failure to explain <u>why</u> the lack of an expert witness undermines her case that is the dispositive point. Nor does this Court find Defendant Wal-Mart entitled to summary judgment on the Plaintiff's claim of negligence. Only with respect to the Plaintiff's claim of products liability against Wal-Mart does this Court see a basis for summary judgment relief.

**ACCORDINGLY**, this Court recommends to the District Court that Defendant Johnson Controls' Motion for Summary Judgment be **DENIED**. This Court recommends that Defendant Wal-Mart's Motion for Summary Judgment be **GRANTED** with respect to Count VI as brought against Wal-Mart but be **DENIED** in all other respects. Thus this Court recommends that summary judgment be entered in Defendant Wal-Mart's favor on Count VI for products liability only.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections,

if any, with the Honorable Jose E. Martinez, the United States

District Judge assigned to this case.

      **DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida,

this _13th_ day of December, 2013.

                            FRANK J. LYNCH, JR.

                            UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Jose E. Martinez
     Michael J. Drahos, Esq.

     Lisa Taylor, pro se
     PO Box 203
     Imperial, MO  63052